# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PERFORMANCE CONTRACTING, INC.,

   Plaintiff,

    v.

RAPID RESPONSE CONSTRUCTION, INC.,

   Defendant.

Civil Action No. 09–639 (CKK)

## MEMORANDUM OPINION
(March 23, 2010)

This action arises out of a contract dispute between Plaintiff Performance Contracting, Inc. ("Performance") and Defendant Rapid Response Construction, Inc. ("Rapid"). Performance alleges that it accidentally overpaid Rapid for its work under a construction subcontract and that Rapid has refused to repay the excess money. Presently pending before the Court is Rapid's [11] Motion to Dismiss the Complaint with Prejudice, which raises a statute of limitations defense. Performance has filed an opposition, and Rapid has filed a reply, so the motion is ripe for adjudication. However, because Rapid raised a new argument in its reply based on a settlement agreement that Performance attached to its opposition, the Court shall DENY WITHOUT PREJUDICE Rapid's Motion to Dismiss and permit Rapid to file a new dispositive motion addressing the settlement agreement and its statute of limitations defense.

## I. BACKGROUND

Performance and Rapid are both construction subcontractors authorized to do business in the District of Columbia. Compl. ¶¶ 1-2. The facts of this case revolve around a subcontract

between Performance and Rapid for services related to the construction of the Embassy Suites Hotel at 1000 K Street, N.W., Washington, D.C. (the "Project"). The general contractor for the Project, Hunt Construction Group, Inc. ("Hunt"), entered into a subcontract with Performance to provide certain labor, supervision, material, and equipment for, among other things, earthworks and concrete work for the Project. *Id.* ¶¶ 6-7. Performance, in turn, entered into a lower-tier subcontract (the "Subcontract") with Rapid, under which Rapid was to perform, among other things, certain earthwork and concrete work. *Id.* ¶ 8. Performance has attached excerpts from the Subcontract as an exhibit to the Complaint. *See* Compl., Ex. 1 (Subcontract Excerpts). The base value for the Subcontract was originally $4,676,355. Compl. ¶ 8. The Subcontract included a provision that Performance would withhold five percent (5%) of the final payment to Rapid until Performance was paid for this amount, called the retention, by the upper tier contractor. Compl. ¶ 9 & Ex. 1, Subcontract Attachment C § 7. As part of the Subcontract, Rapid also agreed to give Performance a security interest in its receivables, inventory, equipment, records, and other materials. Compl. ¶ 10 & Ex. 1, Subcontract Attachment G § 8.

Initially, Rapid and a company called Blake & Day Concrete Construction ("B&D") subcontracted as a joint venture to Performance. *Id.* ¶ 11. However, a dispute ensued between B&D and Rapid, and B&D filed a lawsuit against Rapid, Performance, and Hunt. *Id.* The parties eventually settled, and as part of the settlement agreement, Hunt and Performance agreed to escrow all proceeds from contracts relating to Rapid, with Rapid and B&D to determine independently how to distribute the escrowed proceeds. *Id.* As a result of the settlement, as well as change order and other modifications, the value of Rapid's Subcontract increased to $5,292,041. *Id.* ¶¶ 8, 11.

2

After the Project was closed out in 2006, Performance performed a routine audit and, in September 2006, discovered that Performance had inadvertently paid Rapid the same $166,147 retention amount twice. Compl. ¶¶ 12, 20. Performance promptly informed Rapid about the double payment and sought to make arrangements for the return/refund of the extra $166,147. *Id.* ¶ 13. Thereafter, Performance met with officials from Rapid, who acknowledged the overpayment and began negotiating how Rapid could make the repayment to Performance. *Id.* ¶ 14. On February 24, 2009, Performance sent a letter via United Parcel Service (UPS) to Rapid regarding the overpayment, including documentation. *Id.* ¶ 15 & Ex. 3 (2/24/2009 Letter & exhibits). UPS delivered the letter package to Rapid on February 25. Compl. ¶ 15. A month later, the package was returned, having been opened and taped shut, with a notation from UPS that "RECEIVER DID NOT WANT, REFUSED DELIVERY" and indicating that the original receiver was "RAPID RESPONSE." *Id.* & Ex. 5 (UPS return).

Rapid has failed or otherwise refused to refund the overpayment of $166,147. Compl. ¶ 16. In its Complaint, Performance claims that Rapid's refusal to remit the overpayment after being notified of the double payment is a material breach of the Subcontract. *See* Compl. ¶¶ 17-23. Performance also claims that Rapid did not earn the $166,147 and therefore Rapid has been unjustly enriched by the accidental overpayment. *See id.* ¶¶ 24-30. Performance thus states claims for breach of contract (Count I) and unjust enrichment (Count II). Performance demands judgment against Rapid for $166,147.00, plus interest, attorneys' fees, costs, and any other relief the Court deems appropriate.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of

misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

### III. DISCUSSION

Rapid moves to dismiss the Complaint on the ground that Performance's claims are barred by the applicable three-year statute of limitations.[1] A defendant may raise the affirmative defense of statute of limitations in a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). The court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985). Here, Rapid contends that the exhibits attached to the Complaint clearly demonstrate that the last payments made by Performance occurred in 2005, more than three years before the Complaint was filed in this action in April 2009. *See* Def.'s Mot. at 2.

---

[1] The parties agree that under District of Columbia law, a three-year statute of limitations applies to claims for breach of contract and unjust enrichment. *See* D.C. Code § 12-301(7)-(8).

In its opposition brief, Performance explains that the inadvertent overpayment actually occurred on August 8, 2006, when Performance issued a check for $195,040 to an escrow account pursuant to the settlement agreement between Performance, Rapid, Hunt, and B&D. *See* Pl.'s Opp'n at 2. Alternatively, Performance argues that even if last payment to Rapid occurred in 2005, its causes of action did not accrue until at least September 2006, when it discovered the overpayment. *See id.* at 5-6. Performance also argues that the statute of limitations should be equitably tolled based on Rapid's conduct in acknowledging the overpayment and subsequently refusing to pay. *See id.* at 6-7. Performance did not specify in the body of its Complaint when the alleged overpayment occurred, but the August 2006 payment is reflected in an accounting statement attached to the Complaint. *See* Compl., Ex. 2 ("Contract/Payment Reconciliation") at 2. Ordinarily, such an allegation would be sufficient to defeat a motion to dismiss on statute of limitations grounds. However, Performance's opposition brief includes additional information that raises doubts about whether the August 2006 payment can serve as the basis for Performance's claimed overpayment. Performance attaches two exhibits to its opposition brief: (a) the settlement agreement, signed by Performance on August 21, 2006; and (b) a copy of the check paid to the escrow account.

In its reply brief, Rapid presents a new argument based on the settlement agreement: that PCI released any claims against Rapid arising out of the Subcontract as part of the settlement agreement.[2] As a general matter, it is improper for a party to raise new arguments in a reply brief

---

[2] Rapid also argues that the August 2006 payment cannot constitute the alleged overpayment because the money went to the escrow account and not directly to Rapid, even if Rapid eventually got some of the money. *See* Def.'s Reply at 3-4. The settlement agreement explains that the escrowed funds were to be disbursed and divided between Rapid and B&D. *See* Pl.'s Opp'n, Ex. A (Settlement Agreement) ¶ 6.

because it deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments. *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008). In this case, Rapid's inclusion of new arguments is perhaps understandable in light of the fact that Performance brought up the settlement agreement in its opposition. However, the Court is unwilling to make a ruling as to the validity of the release—potentially ruling against Performance—without considering Performance's position on the issue. Accordingly, the Court shall deny Rapid's Motion to Dismiss without prejudice and allow Rapid to file a new dispositive motion addressing the release, its statute of limitations defense, and any other arguments it has in favor of dismissal. If Rapid seeks to rely on matters outside the pleadings, such as the settlement agreement, it may be required to file its motion as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

## IV. CONCLUSION

For the foregoing reasons, the Court shall DENY WITHOUT PREJUDICE Defendant's [11] Motion to Dismiss the Complaint without Prejudice and permit Rapid to file a new dispositive motion. Rapid shall include all of its arguments in its memorandum in support so that Performance has an opportunity to respond to them in its opposition brief. A briefing schedule shall be set out in an appropriate Order, which accompanies this Memorandum Opinion.

Date: March 23, 2010

                                                        */s/*
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge